## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| FABRICE LENORD, | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| v. | ) | |
| | ) | |
| RACETRAC, INC., | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## PLAINTIFF'S COMPLAINT
## FOR EQUITABLE RELIEF AND DAMAGES

COMES NOW Plaintiff Fabrice Lenord ("Mr. Lenord" or "Plaintiff") and files this Complaint for equitable relief and damages against RaceTrac, Inc., (hereinafter referred to as "Defendant"), through undersigned counsel, showing the Court as follows:

## INTRODUCTION

1.

This action is brought by Plaintiff for damages and equitable relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*, national origin discrimination, race discrimination, and retaliation and race/national origin discrimination and retaliation under 42 U.S.C. §1981 to recover (1) compensatory damages for physical and emotional distress; (2) damages for

economic losses; (3) pre and post judgment interest on his damages, where appropriate, calculated at the prevailing rate; (4) punitive damages where appropriate; (5) his costs of litigation, including his reasonable attorney's fees; (6) declaratory and equitable relief to end discrimination by Defendant.

## JURISDICTION AND VENUE

2.

Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e, 28 U.S.C. § 1343 (civil rights), 28 U.S.C. §§ 2201 and 2202 (declaratory judgment), and 42 U.S.C. 1981 (civil rights).

3.

Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendant maintains offices conducting regular business in the Northern District of Georgia, Atlanta Division, and the claims arose within the district and division of the Court.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.

All conditions precedent to this lawsuit within the meaning of Fed. R. Civ. P. 9(c) have been performed or otherwise occurred or have been prevented by the action or inactions of Defendant.  Plaintiff timely filed a charge of discrimination against

Defendants with the Equal Employment Opportunity Commission, ("EEOC") and a "Notice of Right to Sue" was issued by the EEOC.   Plaintiff's Charge to the EEOC served to provide notice of the Charge to Defendant and Defendant was afforded the opportunity to participate in the investigation and conciliation of this Charge.  This action is filed within ninety (90) days of the Plaintiff's receipt of the "Notice of Right to Sue." Thus, administrative remedies have been exhausted.

## PARTIES

5.

Plaintiff, Mr. Lenord, is permanent resident of the United States and a current resident of Fulton County, Georgia.  As such, he is entitled to bring actions of this type and nature.  He submits himself to the jurisdiction and venue of this Court.

6.

Plaintiff is an "employee" as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq and 42 U.S.C. § 1981.

7.

Defendant is a private for-profit company, registered with the Georgia Secretary of State, that was at all times relevant to this action licensed to do business in the state of Georgia, engaged in commerce or industry affecting commerce, employing in excess of fifteen (15) employees for each working day in each of the

twenty (20) calendar weeks in the current or preceding calendar year and located in the state of Georgia, in this federal district and this division. At relevant times hereto, Defendant has maintained their offices, conducting regular, not isolated, acts of business in Atlanta, Georgia, located in the Northern District of Georgia, Atlanta Division. As such, Defendant is subject to personal jurisdiction in Georgia.

8.

Defendant RaceTrac, Inc. may be served with process of service of the Complaint and Summons via its Registered Agent, Corporate Creations Network, Inc., 2985 Gordy Parkway, 1st Floor, Marietta, Georgia 30066.

9.

At all times relevant to this action, Defendant RaceTrac, Inc.'s principal office is located at 200 Galleria Parkway SE, Suite 900, Atlanta, Georgia 30339.

## FACTS

10.

As above, Mr. Lenord was, at all times relevant to this action, an employee of Defendant.

11.

Mr. Lenord was employed by Defendant from on or about October 15, 2012 and continues with that employment.

12.

Mr. Lenord is Black, was born in Port-Au-Prince Haiti and is of Haitian descent and citizenship, currently residing in the United States.

13.

Mr. Lenord was initially employed by the Defendant as a Store Support Help Desk Analyst (SSHD).

14.

Due to Mr. Lenord's impressive work performance, in 2014, Mr. Lenord was promoted to the Network Operation Center (NOC) Level 1 and paid $25.00 per hour.

15.

Mr. Lenord was promoted to NOC Level 2 in 2016 and has gotten multiple raises. In 2022, he is currently making $37.70 an hour.

16.

From July 2016 to July 2017 (one year), prior to Greg Oliver (African-American) becoming his manager, Mr. Lenord received five (5) Spot Bonuses totaling $3,000.00.

17.

From September 2017 to the current date (five years), under Manager Greg
Oliver, Mr. Lenord has received three (3) Spot Bonuses totaling $850.00, with the
last Spot Bonus occurring in July of 2020.

18.

Throughout his tenure with Defendant, Mr. Lenord has been a hard-working
employee who diligently performed his duties on a regular basis. While the
Employer expects him to complete 1,300 tickets per year, Plaintiff far exceeds that
number. At one point, Oliver even sent an email to Plaintiff stating, "Don't worry
about what others are doing just do your job, even though you work harder than the
others." Plaintiff's peers have been caught sleeping on numerous occasions and
fabricating tickets to meet the weekly quotas. These matters have been brought up
to HR, but Employer claims that Plaintiff is the problem.

19.

Beginning on or about September 18, 2017, Plaintiff had to inform Human
Resources on several occasions about inappropriate comments concerning his
Haitian background and culture, racial slurs, tampering with items and computers
on his desk, harassment, intimidation, and disparity of treatment.

20.

Plaintiff was given a mid-year performance review on or about July 20, 2021 by Manager Greg Oliver.  Mr. Lenord was told he was doing "a great job". He told Mr. Oliver he just wanted "to work and do his job." Mr. Oliver said he would relay that message to Director Mike Campbell (Caucasian). In that meeting Plaintiff expressed how the trust in management had been lost due to the discrimination that continued. Oliver never mentioned that Plaintiff was not meeting his employer's expectations of him.

21.

On or about July 21, 2021, **the day after** his meeting with Oliver, Plaintiff had a meeting with Director Mike Campbell who told him that he was <u>not</u> meeting job expectations. Mr. Lenord told Campbell that this was the first time he had heard anything about not meeting employer's job expectations and that Mr. Oliver had said nothing about his not meeting expectations. Mr. Campbell replied, "I'm telling you now."

22.

In the meeting, Campbell alleged that Plaintiff's peers do not want to work with him because of the fear of HR complaints from Plaintiff. However, Campbell

told Plaintiff to go to HR if he has any problems in the workplace. This "double talk" set Plaintiff up in "Catch 22" situation.

23.

Campbell told Plaintiff that the resolution for Plaintiff's problems is to "move on" from Plaintiff's complaints about the discrimination from his peers.

24.

He referred to the complaints as "unfounded allegations" and stated that HR investigated these allegations. However, HR never responded to Plaintiff about their findings regarding the discrimination and the problems about which Plaintiff complained.

25.

Campbell told Plaintiff that "It's not going to continue." And that there were "consequences" to going to HR and complaining. Campbell stated that "This is going to change."

26.

Campbell directly threatened Plaintiff's job if Plaintiff continued to engage in the supposedly protected activity of reporting discrimination to HR. Campbell wanted Plaintiff to agree to make efforts to collaborate with the team because he

stated that collaboration with the team was part of Plaintiff's job and in order to collaborate with the team, Plaintiff would have to stop making reports to HR.

27.

Plaintiff's job description does not indicate that collaboration with the team is a job responsibility or a competency necessary for the performance of the position of Noc. Technician II, the position occupied by Plaintiff.

28.

In the meeting with Director Mike Campbell on July 21, 2021, Campbell stated that Plaintiff's teammates do not want to work with him because he continued to go to Human Resources.  Campbell also stated that by going to HR, Plaintiff "burned bridges."

29.

On December 8, 2021, the new Director Chris Shoemake acknowledged that Plaintiff went above and beyond and that he saw the contribution to the team and company. He told Plaintiff that he did not see the things that Plaintiff was accused of having done and he did not see a valid reason for placing Plaintiff on a Performance Improvement Plan (PIP) on August 18, 2021. At the time Plaintiff was placed on the PIP he was given a job description. However, when Plaintiff was taken off the PIP, Plaintiff was given a different job description.

30.

However, Shoemake later stated that continued complaints to HR would not cause Plaintiff to be placed on a PIP but instead he would be terminated.

## COUNT I

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED RACE AND NATIONAL ORIGIN DISCRIMINATION

31.

Plaintiff re-alleges paragraphs 10 through 30 as if fully set forth herein and further alleges:

32.

Defendant is an employer who is subject to the laws of the United States and more specifically, The Civil Rights Act of 1964, Title VII, as amended.

33.

Defendant violated Title VII by discriminating against Plaintiff because of his Black-Haitian descent.

34.

Plaintiff is a member of a protected group (Black-Haitian).

35.

Plaintiff is and was, at all relevant times, employed by Defendant.

36.

Plaintiff is/was qualified for the position he holds/held as evidenced by his promotion and by his many past pay raises and bonuses.

37.

Plaintiff was subjected to disparate treatment based on his race and national origin.

38.

Plaintiff, who is a Black-Haitian man, worked in a department made up primarily of non-Haitian workers, including manager Greg Oliver.

39.

Defendant treated Plaintiff's similarly situated non-Haitian peers more favorably than he treated Plaintiff.

40.

Plaintiff was subject to slurs against his culture and race in phone calls, texts, and conversations with co-workers and management.

41.

Plaintiff outperformed the other members of his team (non-Haitian) in processing tickets and creating knowledge-based articles. Plaintiff received a unfavorable evaluations, placed on a PIP and threatened with termination. This was

while peers were permitted to make ethnic and racial slurs, sleep while on the job and take credit for resolving fabricated tickets. Some of Plaintiff's peers almost never meet the ticket expectations. And many of Plaintiff's peers do not follow Defendant's expected processes.

42.

On or about August 18, 2021, and after being told that he "burned bridges" by reporting discrimination to Human Resources, Plaintiff was placed on a PIP (Performance Improvement Plan) by Director Mike Campbell for problems with peer leadership and communications. No explanation for this was given. Peer leadership and communications are not listed as necessary responsibilities or competencies in Plaintiff's job description.

43.

Claims of problems with peer leadership were pretextual to cover the real reason for the adverse employment actions, Defendant's animus toward him, a Black-Haitian man. Although not required by his job description, Plaintiff had engaged in peer leadership. In fact, he trained a new hire, helped out his teammates throughout the year, and never refused to support any of his teammates. Plaintiff pointed this out to Campbell but it fell on deaf ears.

44.

Plaintiff was unable to get any specifics from either the recently promoted Manager Greg Oliver or Director Mike Campbell regarding these claims and was only told that his teammates did not want to work with him.

45.

Mr. Lenord's national origin and race were the motivating factors for Defendant's discriminatory treatment of him, a Black-Haitian.

46.

Defendant's actions were in violation of 42 U.S.C. § 2000e et seq. concerning Mr. Lenord's race and national origin.

47.

Defendant's actions were willful, wanton, and intentionally directed to harm Plaintiff in violation of his federally protected rights.

48.

Plaintiff suffered damages as a result of Defendant's actions and omissions.

49.

Defendant's actions were reckless and taken in willful disregard of the probable consequences of its actions.

50.

As Defendant's conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including the award of punitive damages against Defendant in an amount to be determined in the enlightened conscience of the jury.

51.

As a result of Defendant's unlawful conduct, Defendant was the direct and proximate cause of Plaintiff's damages.

52.

Plaintiff has suffered mental and emotional distress causing Plaintiff to use Family Medical Leave Act ("FMLA") leave to recover. Plaintiff had to use FMLA December 2020 to March 2021 and again August 2022 until November 6, 2022. This is in an amount to be determined at trial by the enlightened conscience of an impartial jury.

## COUNT II

## RACE DISCRIMINATION, IN VIOLATION OF 42 U.S.C.§ 1981

53.

Plaintiff re-alleges paragraphs 10 through 30 as if fully set forth herein and further alleges as follows:

54.

Defendant subjected Plaintiff to race/national origin discrimination on the terms and conditions of his employment.

55.

As admitted to by Defendant, Plaintiff was successful on the technical aspects of his job.  However, Defendant treated Plaintiff less favorably that his non-Black Haitian peers who struggled to satisfy their technical job requirements.

56.

Defendant pretextually placed Plaintiff on a PIP, gave him derogatory evaluations, and threatened to terminate him. Defendant alleged that Plaintiff did not sufficiently corroborate with his peers even though Plaintiff's job duties did not include this responsibility or competency as a necessary part of his job.  Defendant did not assist Plaintiff with improving on this skill but instead insisted that he should refrain from making reports to HR.

57.

Plaintiff was discriminated against because of his race, Black-Haitian and was the "but for" reason for the adverse employment actions of Defendant against Plaintiff.

58.

All of these actions constituted race discrimination in violation of 42 U.S.C. § 1981.

59.

As Defendant's conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including an award of punitive damages.

## COUNT III

## TITLE VII RACE AND NATIONAL ORIGIN RETALIATION

60.

Plaintiff re-alleges paragraphs 10 through 52 as if fully set forth herein and further alleges as follows:

61.

Plaintiff was placed on a PIP, was threatened with termination, and had his value to the company depreciated by his superior, in retaliation for Plaintiff's complaints of discrimination, based on race and national origin, in violation of Title VII, 42 U.S.C. § 2000-e, et seq.

62.

Plaintiff reported the illegal discrimination he was suffering multiple times to Human Resources.

63.

Plaintiff's reports to Human Resources constituted protected activity under the Opposition Clause of Title VII's anti-retaliation provisions.

64.

After Mr. Lenord filed complaints with Human Resources multiple times, he was given unflattering, pretextual evaluations, threatened with termination, and pretextually placed on a Performance Improvement Plan (PIP) by Director Mike Campbell after he had gone to HR again.  Campbell threatened Plaintiff with termination if Plaintiff did not stop making allegations od discrimination.

65.

Suffering a degrading review, being placed on a PIP and being threatened with termination would chill the actions of and the likelihood that any reasonable employee, like Plaintiff, would further exercise his rights by engaging in what was supposed to be "protected activity."

66.

Defendant retaliated against Mr. Lenord for engaging in protected activity when Defendant started papering his file with a pretextually, unfavorable performance reviews, threatening him with termination and placing Plaintiff on a PIP which hampered Plaintiff's professional goals with the company.

67.

But for Plaintiff's act of reporting race and national origin discrimination, he would not have suffered these adverse employment actions.

68.

Defendant's stated reason for the adverse employment actions were a pretext for race and national origin discrimination and in retaliation for complaining about race/national origin discrimination.

69.

Defendant's retaliation for protected activity under the opposition clause of Title VII's anti-retaliation provisions violated Plaintiff's right to engage in protected activity.

70.

As a direct result of Defendant's actions and omissions, Plaintiff suffered economic damages, mental and emotional distress, humiliation, outrage, damage to his reputation, the deprivation of his rights under federal law, and is entitled to compensatory damages, punitive damages, costs and attorneys' fees.

## COUNT IV

## RETALIATION IN VIOLATION OF 42 U.S.C. SECTION 1981

71.

Plaintiff re-alleges paragraphs 10 through 30 and 53 through 59 as if fully set forth herein and further alleges:

72.

Defendant retaliated against Plaintiff in violation of the anti-retaliation provisions of 42 U.S.C. § 1981.

73.

Director Mike Campbell began negatively papering Plaintiff's file just **one day** after speaking with Manager Greg Oliver about Plaintiff's expressed "lack of trust" of management due to management's failure to respond to Plaintiff's complaints of discrimination.

74.

Plaintiff reported the illegal discrimination he was suffering multiple times to Human Resources. He discussed the discrimination with Oliver then he discussed the illegal discrimination with Campbell.  Rather than working with Plaintiff to end Defendant's illegal discrimination, Oliver blamed Plaintiff claiming that Plaintiff caused the problems by continually complaining to HR.

75.

Plaintiff engaged in protected activity when he reported the discrimination to his employer.

76.

The adverse employment actions suffered by Plaintiff occurred as a direct result of his opposition to discrimination he suffered based on race in violation of the provisions against retaliation in 42 U.S.C. § 1981. But for Plaintiff's act of complaining about the discrimination he suffered based on race/national origin, he would not have suffered the adverse employment acts.

77.

As a result of Defendant's unlawful conduct, Plaintiff has suffered mental and emotional distress in an amount to be determined at trial by the enlightened conscience of an impartial jury. Plaintiff has suffered economic losses and certain benefits of employment, which he seeks to recover from Defendant.

**WHEREFORE**, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

(a)     Issue a declaratory judgment that Defendant's acts, policies, practices and procedures complained of herein violated Mr. Lenord's rights as secured under Title VII of the Civil Rights Act of 1964, as amended;

(b)     Grant to Mr. Lenord judgment in his favor and against Defendant under all counts of this Complaint;

(c)     Order Defendant to make Mr. Lenord whole by providing for his out-of-pocket losses as well as other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with interest thereon at a rate allowed by law, all in an amount to be proven at trial;

(d)     Award Plaintiff pre-judgment interest;

(e)     Award Plaintiff compensatory damages in an amount to be determined in the enlightened conscience of the jury to compensate Plaintiff for the economic, mental and emotional damages suffered as a result of Defendant's illegal, discriminatory conduct;

(f)     Award Plaintiff punitive damages against Defendant in an amount to be determined in the enlightened conscience of the jury to punish for Defendant for its willful and intentional violations of Plaintiff's federal rights and to deter such conduct in the future;

(g)     Award Mr. Lenord nominal damages;

(h)     Award Plaintiff his costs and expenses, including reasonable attorneys'
fees and reasonable expert witness fees together with any and all other costs
associated with this action as provided by 42 U.S.C. § §1988 and -2000e and Section
1981;

(i)     Pursuant to the Seventh Amendment of the United States Constitution
and Rule 38, Fed. R. Civ. P., TRIAL BY JURY on all claims on which a jury is
available

(j)     Instruct Clerk to issue summons; and

(k)     Award such additional monetary and equitable relief as the Court
deems proper and just.

Respectfully submitted, this 4th day of November 2022.

/s/ Beverly A. Lucas
Georgia Bar No.:  427692
LUCAS & LEON, LLC
Post Office Box 752
Clarkesville, Georgia 30523
T: (706) 752-2001
F: (706) 752-8085
beverly@lucasandleon.com

*Attorney for Fabrice Lenord*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| FABRICE LENORD, | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| v. | ) | |
| | ) | |
| RACETRAC, INC., | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## CERTIFICATE OF FONT COMPLIANCE
## REQUIRED BY LOCAL RULE 7.1D

In accordance with Local Rule 7.1D, I hereby certify that the foregoing was prepared with one of the font and point selections approved by the Court in Local Rule 5.1B. Specifically, it was prepared with Times New Roman, 14 point.

This 4th day of November 2022

BY: */s/Beverly A. Lucas*
Beverly A. Lucas
LUCAS & LEON, LLC
GA State Bar No. 427692
beverly@lucasandleon.com
Post Office Box 752
Clarkesville, Georgia 30523
Telephone: 706-754-2001
Fax: 706-754-8085